UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
JASON SHELDON,

                              Plaintiff,                          **REPORT AND**
                                                                  **RECOMMENDATION**
                                                                  15 CV 5885 (CBA) (CLP)

              -against-

PLOT COMMERCE, a corporation,

                              Defendant.

------------------------------------------------------------ x

**POLLAK**, United States Magistrate Judge:

        On September 1, 2015, plaintiff Jason Sheldon ("plaintiff") commenced this action in the

Southern District of New York against defendant Plot Commerce, pursuant to 17 U.S.C. § 101 et

seq. (the "Copyright Act"), and 17 U.S.C. § 1201 et seq. (the "Digital Millennium Copyright Act"

or the "DMCA"), asserting a variety of claims flowing from defendant's unauthorized use of a

copyrighted photograph taken by plaintiff Sheldon.  On October 13, 2015, because defendant's

principal place of business is located in Brooklyn, New York, the case was transferred from the

Southern District of New York to the Eastern District of New York.  After Plot Commerce failed

to answer or otherwise respond to the Complaint, Sheldon requested entry of a certificate of

default on January 18, 2016, which request was granted on January 29, 2016.

        Thereafter, on February 3, 2016, plaintiff filed a motion for default judgment, which was

referred to the undersigned by the Honorable Carol B. Amon on February 4, 2016 to conduct an

inquest and issue a Report and Recommendation as to damages.  For the reasons set forth below,

the Court respectfully recommends that plaintiff's motion for default judgment be granted, and

that plaintiff be awarded $510,000, representing $10,000 in actual damages under the Copyright

Act and $500,000 in statutory damages under the DMCA, but that the requests for attorneys' fees and costs be denied without prejudice to refile with proper documentation and authority.

## FACTUAL BACKGROUND

Plaintiff Sheldon is a professional photographer who resides in West Midlands in the United Kingdom. (Compl.[1] ¶ 1). Defendant Plot Commerce is a corporation organized and existing under the laws of the State of Nevada. (Id. ¶ 2). Plot Commerce is registered to do business in the State of New York, with its principal place of business located at 10 Jay Street, Suite 206, Brooklyn, New York, 11201.[2] (Id.) Plot Commerce operates a website by the name of Charged.fm, which advertises sports, music, theater, and comedy events and allows users to buy and sell tickets for these events online (the "Charged.fm Website"). (Id. ¶ 23).

Sheldon specializes in event photography, including concert photography. (Id. ¶ 7). In 2011, the Express & Star Newspaper commissioned Sheldon as a freelance photographer to photograph singer Lana Del Rey performing in concert at the HMV Institute in Birmingham, United Kingdom on November 17, 2011. (Id. ¶ 8). Pursuant to this agreement, Sheldon attended the concert and took several photographs of the singer during her performance. (Id. ¶ 9). The photographs were published on November 18, 2011. (See Cert. of Reg.[3]). In early 2012, Sheldon

_____

[1]Citations to "Compl." refer to the Complaint, filed by plaintiff on September 1, 2015.

[2]As discussed further infra at 7, it is unclear whether Plot Commerce still operates at this location. However, because Plot Commerce has not changed its registration with the New York Secretary of State to indicate any change in address, the Court has treated this address as proper for Plot Commerce.

[3] Citations to "Cert. of Reg." refer to the Certificate of Registration, issued under the seal of the Copyright Office of the United States, attached as Ex. A to the Complaint, filed on September 1, 2015.

licensed one of the photographs (the "Photograph") to a non-party entertainment network for an editorial display on the website, http://www.nme.com (the "NME Website"). (Compl. ¶ 10). As displayed on the NME Website, the Photograph contained certain metadata embedded in its digital file, listing "Jason Sheldon" as the creator of the Photograph and "Jason Sheldon/EMPICS Entertainment"[4] as the copyright holder of the Photograph (the "Sheldon Metadata"). (Id. ¶ 11).

Plaintiff alleges that at some point in February 2015, he discovered that Plot Commerce had reproduced, modified, and displayed the Photograph on the Charged.fm Website without Sheldon's authorization. (Id. ¶ 12). Plaintiff alleges, upon information and belief, that this unauthorized use of the Photograph began in or about September 2012. (Id.) Plot Commerce "continued reproducing and displaying the Photograph on the Charged.fm Website until at least March 25, 2015." (Id. ¶ 13). Plaintiff alleges that the Charged.fm Website contained eleven reproductions of the Photograph, none of which acknowledged Sheldon as either the author or the copyright owner of the Photograph. (Id. ¶ 15). Plot Commerce had removed the Sheldon Metadata from each of the eleven reproductions of the Photograph. (Id. ¶¶ 16, 44). In addition to removing the Sheldon Metadata, Plot Commerce added the Charged.fm name and information regarding dates and ticket prices for upcoming concerts to nine of the eleven reproductions of the Photograph. (Id. ¶ 17).

On April 17, 2015, Sheldon officially registered the Photograph with the Register of Copyrights for the U.S. Copyright Office. (Id. ¶ 22). Sheldon alleges that he has complied in all

---

[4]Although plaintiff did not initially address the reason for which "EMPICS Entertainment" was included in the Photograph's metadata, plaintiff subsequently informed the Court that a non-party licensing agency, Press Association, included "EMPICS Entertainment" in the metadata when Sheldon submitted the Photograph to the agency for licensing.

respects with the Copyright Act of 1976, § 101 <u>et seq.</u>, and all other laws and regulations governing copyrights, thereby securing the exclusive rights and privileges in and to the copyrights for the Photograph.  (<u>Id.</u> ¶ 21).

PROCEDURAL BACKGROUND

After discovering the Photograph on the Charged.fm Website, Sheldon retained attorney Evan Anderson, Esq., who mailed a letter and sent an email to Plot Commerce on March 25, 2015, notifying them that the Photograph appearing on the Charged.fm Website was without Sheldon's authorization.  (Anderson Decl.[5] ¶ 3).  The letter requested that Plot Commerce cease all uses of the Photograph and present an offer to settle plaintiff's claims against Plot Commerce. (<u>Id.</u> ¶ 4).  On March 26, 2015, Anderson was contacted by Renée Eubanks, an attorney at Dentons US LLP, who had been retained by Plot Commerce for the purpose of pre-suit settlement discussions.  (<u>Id.</u> ¶ 5).  Anderson and Eubanks communicated from March 26, 2015 through May 6, 2015 regarding potential settlement agreements.  (<u>Id.</u> ¶ 6).  However, Plot Commerce did not express interest in further discussions about the possibility of settlement.  (<u>Id.</u>)

After settlement proved unlikely, Sheldon commenced this action on September 1, 2015 in the Southern District of New York, alleging copyright infringement (First Cause of Action), false copyright management information (Second Cause of Action), and removal or alteration of copyright management information (Third Cause of Action).  (Compl. ¶¶ 29-47).  Sheldon alleges

---

[5]Citations to "Anderson Decl." refer to the Declaration of Evan Anderson, attached to the Memorandum of Law in Support of Plaintiff's Motion for Default Judgment, which was filed on April 22, 2016.

that Plot Commerce has infringed on Sheldon's copyrights for the Photograph under the Copyright Act by "reproduc[ing], distribut[ing], display[ing], and creat[ing] derivative works of the Photograph," and has violated the DMCA by removing the Sheldon Metadata from the Photograph and adding the Charged.fm logo and concert information to the Photograph.  (Id. ¶¶ 30, 38, 44).

With Sheldon's consent, the case was transferred to the Eastern District of New York on October 5, 2015 because Plot Commerce maintains its principal place of business in Brooklyn. (Docket No. 9).  Sheldon attempted to serve Plot Commerce at 10 Jay Street, Suite 206, Brooklyn, New York — the address registered for Plot Commerce with the Secretary of State of New York (hereinafter, "N.Y. Secretary of State") — but all attempted correspondence was returned and marked as undeliverable.  (Nagampalli Decl.[6] ¶ 3).  On November 19, 2015, Sheldon again attempted to serve the Summons, Complaint, and Civil Cover Sheet on Plot Commerce through the N.Y. Secretary of State, pursuant to Section 306 of the New York Business Corporation Law.[7]  (Id. ¶ 5).

Anderson and Eubanks continued to correspond between September 2015 and February 2016, but Eubanks repeatedly stated that Plot Commerce had not made a final decision as to whether it would retain Dentons for the litigation, and therefore, Eubanks could not accept

---

[6]Citations to "Nagampalli Decl." refer to the Declaration of Kalpana Nagampalli, attached to the Memorandum of Law in Support of Plaintiff's Motion for Default Judgment, which was filed on April 22, 2016.

[7]Section 306 of the New York Business Corporation Law states that "[s]ervice of process on [a registered] corporation shall be complete when the secretary of state is so served."  N.Y. Bus. Corp. Law § 306.

service on behalf of Plot Commerce at that time.  (Anderson Decl. ¶¶ 10-18).

Despite service through the N.Y. Secretary of State, Plot Commerce has failed to appear or respond to the Complaint in any way.  On January 18, 2016, Sheldon requested entry of a certificate of default from the Court, which request was granted by the Clerk of Court on January 29, 2016.  (Docket Nos. 16, 17).  Following entry of default, Sheldon filed a motion for default judgment on February 3, 2016.  Sheldon again served the updated motion papers on Plot Commerce by way of the N.Y. Secretary of State.  (Tr.[8] at 6:14-15).  Anderson made another effort to serve the notice of default on Plot Commerce by emailing all necessary motion papers to Eubanks on February 23, 2016.  (Anderson Decl. ¶ 17).  Eubanks replied on February 23, 2016, stating that she would not accept correspondence on behalf of Plot Commerce because she did not represent Plot Commerce in this suit.  (Id. ¶ 18).

On April 13, 2016, the Court Ordered plaintiff to file supplemental documentation by April 22, 2016, explaining the exact relief requested, including an affidavit setting forth the basis and method for calculating any requested default damages and/or attorneys' fees along with any other supporting documentation.  Plaintiff was also Ordered to provide a memorandum of law in support of his motion for default judgment.  On April 22, 2016, plaintiff filed a series of supplemental documents.  (Docket Entry 21).

On June 21, 2016, after reviewing plaintiff's submissions, the Court Ordered plaintiff to file supplemental documentation as to his standing to bring this case against Plot Commerce, citing concern that the Photograph may have been commissioned as a work-for-hire and that

---

[8]Citations to "Tr." refer to the transcript of the inquest hearing held on July 6, 2016, filed as document entry 26 on the public docket.

Sheldon may not have applied for copyright registration within the time allotted by the Copyright

Act.  The Court also Ordered plaintiff to provide a more complete explanation as to plaintiff's

request for maximum statutory damages allowed under the DMCA.  (See Docket Entry 22).

Plaintiff's counsel submitted a memorandum of law in response on July 1, 2016.  (Docket Entry

23).

On July 6, 2016, counsel for plaintiff appeared before the court for an inquest hearing.

Defendant failed to appear and plaintiff's counsel stated that they have not received any

communications from the defendant since settlement negotiations broke down in May 2015.  (Tr.

at 2:18-19).  During the hearing, the Court asked plaintiff's counsel to explain the problems

plaintiff has faced in attempting to serve defendant.  (Id. at 2:21-23).  Plaintiff's counsel further

elaborated on their attempts to serve Plot Commerce, explaining that they had attempted to serve

Plot Commerce at its registered Brooklyn address of 10 Jay Street to no avail.  (Id. at 5:10-12).

Counsel stated that the building is "vacant and under construction," and that Plot Commerce had

not left any forwarding address for its mail.  (Id. at 5:11-12, 14-15).  Plaintiff then attempted to

serve Plot Commerce through Federal Express, registered and certified mail, but all mailings

were returned.  (Id. at 6:3-8).  Plaintiff then served Plot Commerce properly by way of the Office

of the New York Secretary of State.  (Id. at 6:14-15).  Since Plot Commerce is a Nevada

corporation, plaintiff also served defendant by way of the Office of the Secretary of State of

Nevada.  (Id. at 7:7-13).  However, in Nevada, "[a]n unknown person put [the documents] in a

[mail]box and they were marked as undeliverable because no one by that name lives at that

address."  (Id. at 7:13-17).  Counsel for plaintiff also noted that "Plot Commerce was active in

litigation in . . . a trademark case where they were the plaintiff in the Eastern District of New

York about the same time that this case was proceeding." (Id. at 8:5-9).  The Court advised

plaintiff's counsel to pursue a method of alternative service by examining the papers from that

other case to see if Plot Commerce had provided a different mailing or email address.  (Id. at

8:15-25, 9:1-5).

     In addition to clarifying the obstacles plaintiff has encountered in his various attempts at

service, counsel for plaintiff elaborated on their calculations of damages to which Sheldon

believes he is entitled.  Counsel asserted at the hearing that maximum statutory damages were

necessary because a failure to punish Plot Commerce for its "brazen use of the Photograph" and

its "unwillingness to participate in this litigation" would result in Plot Commerce, as well as

other similar businesses, feeling as though they could get away with infringement of this kind in

the future.  (Id. at 11:20-23, 12:12-18).

     After the hearing, plaintiff filed additional documentation in support of his motion on July

26, 2016, detailing his latest attempt to serve Plot Commerce and other updates as to his

attorneys' fees calculations.[9]  (See Pl.'s 7/26/16 Ltr.[10]).  According to the July 26, 2016 letter,

plaintiff again attempted to serve Plot Commerce by "sen[ding] all papers filed in this action by

first class mail to Justin Mercer, Esq., at Lewis and Lin, LLC[;]" he had represented Plot

Commerce in "an unrelated lawsuit in the Eastern District of New York (Plot Commerce, Inc. v.

Ticketnetwork et al, 15-1372)."  (Id. at 1).  However, after receiving counsel's follow-up email,

---

    [9]Counsel's updated attorneys' fees request reflects the additional work performed
subsequent to the filing of the motion for default judgment.

    [10]Citations to "Pl.'s 7/26/16 Ltr." refer to plaintiff's letter detailing his latest attempt to
serve Plot Commerce, as well as his request for attorneys' fees, filed on July 26, 2016.

"Mr. Mercer immediately replied to say that neither he nor his firm represents Plot Commerce after the previous lawsuit was resolved last year, and that he did not have a current address for Plot Commerce." (Id.)  Additionally, Mr. Mercer formally refused to accept service on behalf of Plot Commerce.  (Id. at 1-2).

As of the date of this Report and Recommendation, Plot Commerce has failed to answer the Complaint or otherwise appear before the Court.


## DISCUSSION

### I. Default Judgment

#### A. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  See id.; FED. R. CIV. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See FED. R. CIV. P. 55(b).

The Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in

disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Id. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because a defendant is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

      The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including:  (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants on notice, see FED. R. CIV. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; cf. King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay

involved, and whether the default judgment may have a harsh effect on the defendant." Pacific

M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal

citations omitted).

The burden is on the plaintiff to establish his entitlement to recovery. See Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506

U.S. 1080 (1993). When a default judgment is entered, the defendant is deemed to have admitted

all well-pleaded allegations in the complaint pertaining to liability, but not as to damages. Id.

Thus, the plaintiff must first establish the defendant's liability as a matter of law, since a

defaulting defendant is not considered to have admitted to any legal conclusions. Advanced

Capital Commercial Grp., Inc. v. Suarez, No. 09 CV 5558, 2013 WL 5329254, at *3 (E.D.N.Y.

Sept. 20, 2013). It remains the plaintiff's burden to demonstrate that the uncontroverted facts

establish the defendant's liability on each cause of action asserted. Finkel v. Romanowicz, 577

F.3d 79, 84 (2d Cir. 2009). In doing so, however, the Court draws all "reasonable inferences

from the evidence offered" in plaintiff's favor. Id. (quoting Au Bon Pain Corp. v. Artect, Inc.,

653 F.2d 61, 65 (2d Cir. 1981)).

After demonstrating the defendant's liability, the plaintiff must also establish its

entitlement to the requested relief to a "reasonable certainty." Gunawan v. Sushi Sake

Restaurant, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). While "the court must ensure that there is a

basis for the damages specified in a default judgment, it may, but need not, make the

determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156

(S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

11

II.  Plot Commerce's Liability

Before recommending an award of any damages, the Court must determine whether the

allegations in Sheldon's Complaint establish a right to relief under 17 U.S.C. § 101 et

seq. for copyright infringement, and 17 U.S.C. § 1201 et seq. for both false copyright

management information and removal or alteration of copyright management information.  As an

initial matter, the Court must first be satisfied that it can exercise personal jurisdiction over Plot

Commerce and has subject matter jurisdiction over the dispute.  See FED. R. CIV. P. 12(h)(3); see

also Wolf v. Town of Southampton, No. 12 CV 5166, 2013 WL 4679672  at *6 n.3 (E.D.N.Y.

Aug. 30, 2013) (dismissing the complaint as to several defendants against whom default was

entered because of lack of subject matter jurisdiction); Hua Chen v. Honghui Shi, No. 09 CV

8920, 2013 WL 3963735, at *4 (S.D.N.Y. Aug. 1, 2013) (noting that, while lack of personal

jurisdiction is not grounds for sua sponte dismissal of a complaint, default judgment cannot be

entered against a nonappearing defendant who is not subject to the court's jurisdiction).  The

Court must also be satisfied that Sheldon has standing to bring the instant action.  See Bricklayers

Ins. Welfare Fund v. Manley Const. Corp., No. 13 CV 0224, 2014 WL 4722754, at *3 (E.D.N.Y.

Aug. 13, 2014), report and recommendation adopted in part, 2014 WL 4699710 (E.D.N.Y. Sept.

22, 2014) (recommending dismissal of a claim brought by plaintiffs who lacked standing, even in

the context of a motion for default judgment).

The order in which the Court addresses these questions does not matter; "a federal court

has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'"

Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431-32 (2007) (quoting

Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999)); accord In re Facebook, Inc., IPO

Securities & Derivative Litig., 922 F. Supp. 2d 445, 454 (S.D.N.Y. 2013) (noting that such "threshold grounds" include questions of justiciability).

    A. Personal Jurisdiction

        1. Legal Standard

Personal jurisdiction is a necessary prerequisite to entry of a default judgment.  If a defendant does not receive service in compliance with Rule 4 of the Federal Rules of Civil Procedure and does not waive formal service, the court lacks personal jurisdiction over the defendant.  See Martin v. N.Y. State Dep't of Mental Hygiene, 588 F.2d 371, 373 (2d Cir. 1978); see also Michaelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989) (stating that proper service on a defendant of a summons and complaint is a prerequisite to personal jurisdiction).

Rule 4 of the Federal Rules of Civil Procedure prescribes the manner in which service of process must be effected in order to subject a defendant to the court's jurisdiction.  See FED. R. CIV. P. 4.  Thus, it is well established that failure to adequately prove proper service of court documents under Rule 4 bars the entry of a default judgment.  See, e.g., Orellana v. World Courier, Inc., No. 09 CV 576, 2010 WL 3861002, at *2 (E.D.N.Y. Aug. 24, 2010) (denying motion for default judgment against a defendant for whom plaintiff had not adequately proved service); Cowder v. Admin. for Children & Families, No. 09 CV 628, 2010 WL 723440, at *2 (E.D.N.Y. Mar. 1, 2010) (denying motion for default judgment where service had not been properly effected); Llaviganay v. Cipriani 110 LLC, No. 09 CV 737, 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (noting that inadequate proof of service bars entry of default judgment).

Here, the defendant has not indicated any intention to waive service; accordingly, the Court must determine whether all necessary documents have been served in compliance with the requirements of Rule 4.

According to Rule 4, "[u]nless federal law provides otherwise or the defendant's waiver has been filed, a domestic . . . corporation . . . [can] be served . . . in a judicial district of the United States . . . by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant." FED. R. CIV. P. 4(h)(1)(B). Rule 4 also provides, however, that service may be effected by "following state law . . . [of] the state where the district court is located . . . ." FED. R. CIV. P. 4(e)(1). Thus, in this case, service under Rule 4 may also be deemed proper if plaintiff has complied with New York law. Section 306 of the Business Corporation law provides that

> service of process on the secretary of state as agent of a domestic or authorized foreign corporation shall be made by personally delivering [all necessary documents] to . . . the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany . . . . Service of process on such corporation shall be complete when the secretary of state is so served.

N.Y. Bus. Corp. L. § 306(b)(1). Thus, a corporation registered to do business in New York may be served by proper service upon the Secretary of State of New York.

The technical requirements of Rule 4 and Section 306 notwithstanding, courts have recognized that the fundamental purpose of service is to give a defendant notice of the claims against them; due process requires that service be "reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." DPWN Holdings (USA), Inc. v. United Air Lines, 871 F. Supp. 2d 143, 154 (E.D.N.Y. 2012) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). At its core, this standard is one of reasonableness. Id. Thus, courts will deem valid efforts to serve outside the bounds of Rule 4 where a defendant has "actual notice" of the documents mailed. See, e.g., Burda Media, Inc. v. Blumenberg, No. 97 CV 7167, 2004 WL 1110419, at *6-*7 (S.D.N.Y. May 18, 2004).

## 2. Analysis

Plaintiff has struggled, despite valiant efforts, to make contact with Plot Commerce. As discussed above, plaintiff attempted to serve Plot Commerce by mail at the address registered with the N.Y. Secretary of State, but to no avail. In light of Plot Commerce's incorporation in Nevada, plaintiff then attempted to serve Plot Commerce through the Nevada Secretary of State, although the mailings were ultimately returned anonymously. Sheldon also attempted service through Plot Commerce's attorneys. First, Sheldon attempted to mail all necessary documents to Eubanks, who represented Plot Commerce in pre-suit negotiations; Eubanks declined to accept service on behalf of the defendant. Eubanks represented, however, that she was in contact with the defendant to determine whether her firm would represent the defendant for the suit as well. Then plaintiff contacted Mercer, who had represented Plot Commerce in a separate suit, but Mercer claimed not to have a current address for the company and would not accept service. Plaintiff finally served Plot Commerce on November 19, 2015 by delivering all documents to the N.Y. Secretary of State in accordance with New York law.

As discussed above, service pursuant to Section 306 of the Business Corporation Law is deemed complete as soon as all necessary documents are delivered to the New York Secretary of State. N.Y. Bus. Corp. L. § 306(b)(1). "New York designates the Secretary of State as agent for service of process for all corporations. Section 306 of [New York Business Corporation Law] provides in substance that service of process on the Secretary of State as the agent for a corporation shall be made by delivering duplicate copies of the process to the Secretary of State. The . . . Secretary is directed to promptly send one of the copies by certified mail, return receipt requested, to the corporation at the post office address on file with his department. The statute explicitly provides that: '[s]ervice of process on such corporation shall be <u>complete</u> when the secretary of state is so served.'" <u>Baker v. Latham Sparrowbush Associates</u>, 72 F.3d 246, 254-55 (2d Cir. 1995) (emphasis added). Courts have determined that "plaintiffs persuasively argue that they effected proper service by serving the office of the Secretary of State of New York" when "[p]laintiffs have proffered uncontradicted evidence that defendant was authorized to do business in New York," and is therefore "authorized to accept such service in the office of the Secretary of State[.]" <u>Gesualdi v. Tapia Trucking, LLC</u>, No. 09 CV 842, 2009 WL 2915780, at *2 (E.D.N.Y. Sept. 11, 2009).

Despite the fact that mail sent by the Secretary of State to the registered address may not be received directly by defendants, "it is a corporation's obligation to keep on file with the Secretary of State the current address of an agent to receive service of process." <u>Cedeno v. Wimbledon Bldg. Corp.</u>, 207 A.D.2d 297, 298, 615 N.Y.S.2d 40, 40 (1st Dep't 1994) (citing <u>Paul Conte Cadillac v. C.A.R.S. Purch. Serv.</u>, 126 A.D.2d 621, 622, 511 N.Y.S.2d 58 (2d Dep't 1987); <u>Cristo Bros. v. M. Cristo, Inc.</u>, 91 A.D.2d 807, 458 N.Y.S.2d 50 (3d Dep't 1982)). Courts

16

have determined that "a corporate defendant's failure to receive copies of process served upon the Secretary of State due to a breach of its obligation to keep a current address on file with the Secretary of State does not constitute a reasonable excuse for its delay in appearing and answering the complaint[.]"  Paul Conte Cadillac, Inc. v. C.A.R.S. Purchasing Serv., Inc., 126 A.D.2d at 622, 511 N.Y.S.2d at 59.

In this case, the defendant is authorized to do business in New York, with its principal place of business at 10 Jay Street in Brooklyn, New York, which is the address registered with the New York Secretary of State.  At the inquest hearing, plaintiff represented that he not only attempted to serve defendant at the Jay Street address, but he has also served all documents on the New York Secretary of State in accordance with New York law.  (Tr. at 6:14-15).  Plaintiff has also provided a letter explaining the unsuccessful attempts at service through prior counsel for Plot Commerce, including counsel in an unrelated lawsuit in the Eastern District of New York.  (Pl.'s 7/26/16 Ltr. at 1-2).  Accordingly, the Court finds that plaintiff has complied with the requirements of Rule 4 by serving all papers in compliance with Section 306 of the Business Corporation Law.

Even if the Court were to question whether plaintiff had properly effected service pursuant to Section 306 of the Business Corporation Law, the Court would still be inclined to exercise personal jurisdiction over the defendant in light of clear evidence that Plot Commerce has actual notice of the instant action.  At the inquest hearing, counsel for plaintiff told the Court that plaintiff engaged in "extensive pre-suit negotiations with Eubanks," on behalf of Plot Commerce, demonstrating the company's awareness of the controversy.  (Tr. at 3:19-24).  According to plaintiff, however, Plot Commerce "never offered to engage in settlement

17

discussions outside of general discussions about why they felt their use [of the Photograph] was fair," despite the fact that plaintiff hoped "to resolve this prior to litigation." (Id.)  It eventually became clear that settlement would not be possible, and plaintiff began attempting to serve defendant.  (Id. at 4:4-6).

Counsel for plaintiff contacted defendants' attorney, Eubanks, hoping she would accept service on behalf of Plot Commerce, but Eubanks told counsel she needed more time while she waited to hear from Plot Commerce as to whether or not they would retain her firm for the litigation.  (Anderson Decl. ¶¶ 10-15).  After more than three months passed without any further word from Eubanks, Anderson attempted to serve Plot Commerce by emailing the Certificate of Default and Motion for Default Judgment to Eubanks on February 23, 2016.  (Id. ¶ 17).  Eubanks responded by saying that she could not accept service on defendant's behalf.  (Id. ¶ 18).  It is exceedingly clear to the Court that Plot Commerce has actual notice of the instant action given its participation in discussions about the infringement and given its discussions with Eubanks about whether to retain Dentons US LLP for the lawsuit.

Further, the Court has no qualms about any burden Plot Commerce would face in litigating in the Eastern District of New York, in light of Plot Commerce's decision to avail itself of this Court by beginning its own litigation as a plaintiff in a trademark case filed in this district. See Plot Commerce v. TicketNetwork, Inc. et al, No. 15 CV 1372.

Accordingly, the Court finds that it may validly exercise personal jurisdiction over Plot Commerce, both because plaintiff has adequately complied with Rule 4 by serving the defendant pursuant to Section 306 of the Business Corporation Law and because Plot Commerce has actual notice of the instant action.

B. Subject Matter Jurisdiction

The Court must next determine whether it has subject matter jurisdiction over the dispute. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 93-102 (1998) (noting that courts may not reach the merits of a claim before establishing subject matter jurisdiction). Where subject matter jurisdiction has been conferred by an act of Congress, a party's failure to establish that its case falls within the class of cases covered by the statute renders a court without power to hear the matter. See Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG, 335 F.3d 52, 57 (2d Cir. 2003) (dismissing action where "it [was] clear that appellant's complaint d[id] not trigger that grant [of statutory authority]").

Here, plaintiff seeks relief pursuant to two federal statutes, the Copyright Act and the DMCA. It is well-settled that "in a case arising under . . . a law of the United States, . . . any of the Federal Courts may entertain jurisdiction." Osborn v. Bank of the United States, 22 U.S. 738, 759 (1824). A case "arises under" federal law where the "well-pleaded complaint alleges a cause of action created by federal law." Hon Hai Precision Indus. Co., Ltd. v. Wi-LAN, Inc., No. 12 CV 7900, 2013 WL 2322675, at *5 (S.D.N.Y. May 28, 2013) (internal citations omitted). Since all three of plaintiff's causes of actions are created by federal statutes, the Court finds that it may validly exercise subject matter jurisdiction over plaintiff's claims.

C. Standing to Bring the Instant Action

1. Legal Standard

Questions about the justiciability of claims brought before a court are also considered "threshold questions" to be addressed before the merits of those claims. See Can v. United

19

<u>States</u>, 14 F.3d 160, 162 n.1 (2d Cir. 1994) (noting that justiciability is a threshold question that may be addressed before jurisdictional issues).  Accordingly, where a plaintiff lacks standing to bring a particular claim, a court may not reach the merits of that claim.  <u>See, e.g.</u>, <u>In re Facebook, Inc., IPO Securities & Derivative Litig.</u>, 922 F. Supp. 2d at 463-64 (dismissing action without reaching the merits in part because plaintiffs lacked standing to bring claims).  This requirement applies with equal force in the context of a default judgment.  <u>See Bricklayers Ins. Welfare Fund v. Manley Constr. Corp.</u>, 2014 WL 4722754, at *3 (dismissing claims for which plaintiffs lacked standing upon plaintiffs' motion for default judgment).  The Court must also consider whether plaintiff has standing to bring claims under the Copyright Act and the DMCA.

Where a cause of action is created expressly by an act of Congress, courts may only hear claims by plaintiffs who "fall within the zone of interests protected by the law invoked."  <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 134 S. Ct. 1377, 1388 (2014) (quoting <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984)).  Courts have applied this "zone of interests" framework to limit the class of plaintiffs who may properly sue under a given statute, although the range of interests protected and breadth of potential plaintiffs depend on the particular statute at issue.  <u>Id.</u>  In determining the exact zone of interests protected by a particular statute, courts are instructed to apply "traditional principles of statutory interpretation" to determine what class of individuals are afforded causes of action to protect their rights.  <u>Id.</u>

Both the Copyright Act and the DMCA create private rights of action for "owners" of copyrights.  17 U.S.C. § 106; 17 U.S.C. § 1203.  Accordingly, to bring a valid claim for copyright infringement under either statute, Sheldon must demonstrate that he is the owner of the copyright interests in the Photograph.

2. Analysis

Sheldon has alleged that Plot Commerce committed acts of infringement on his exclusive rights as the copyright owner of the Photograph. Plaintiff's allegations trace the injury suffered by Sheldon directly to Plot Commerce, as the Photograph was reproduced on eleven occasions on a website owned and operated by Plot Commerce. The injury is likely to be redressed by a favorable judicial determination because Sheldon did not receive appropriate compensation for the utilization of the Photograph by Plot Commerce.

In its Order dated June 21, 2016, this Court requested supplemental information and documentation from plaintiff as to Sheldon's legal standing to bring this case, noting concerns that Sheldon might not own the copyright. (See Docket Entry 22). According to the Complaint, Express & Star Newspaper had commissioned Sheldon to photograph Lana Del Rey during a concert. The Court was concerned that the Photograph may have been commissioned as a work-for-hire because the Complaint did not further explain the relationship Sheldon had with Express & Star Newspaper. If the work had been commissioned for hire, the copyright would lie with the employer for whom the work was produced. (See 17 U.S.C. § 201). An additional concern was that Sheldon may not have applied for copyright registration within the time allotted under the Copyright Act, which would potentially invalidate his ownership of the copyright.

In responding to the Court's first concern, plaintiff points to Section 101 of the Copyright Act, which provides that a work is only considered a "work made for hire" "if the parties expressly agree in a written instrument signed by them." (Pl.'s 7/1/16 Mem.[11] at 4) (quoting 17

---

[11]Citations to "Pl.'s 7/1/16 Mem." refer to plaintiff's Memorandum of Law in Response to the Court's June 21, 2016 Order, submitted on July 1, 2016.

U.S.C. § 101).   Plaintiff represents that no written agreement existed between Sheldon and the original publisher of the photograph, Express & Star Newspaper, and therefore the work was not "made for hire."  (Id. at 5).  Thus, Sheldon has always owned the copyright to the Photograph and has standing to bring this suit against Plot Commerce.  (Id.)

As to the Court's second concern, plaintiff cites to Section 410(c) of the Copyright Act, which states that "'[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.'"  (Id. at 6) (quoting 17 U.S.C. § 410).  The Photograph was first published on November 18, 2011, and plaintiff's Certificate of Registration became effective on April 17, 2015, well within the five-year deadline.  (See Cert. of Reg.).  Thus, Sheldon has made a prima facie showing that he is the valid owner of the copyright in the Photograph.  As defendant has not appeared in this action to challenge this prima facie showing in any way, the Court finds that Sheldon has legal standing to bring this suit.

D.  Liability for Copyright Infringement

1.  Standards

Section 106 of the Copyright Act grants owners of a copyright the "exclusive rights to do and to authorize any of the following:  (1) to reproduce the copyrighted work in copies . . . ; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  17 U.S.C. § 106 (emphasis added).  Under the Act, "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by section 106 through 122 . . . is an infringer

of the copyright or right of the author, as the case may be." 17 U.S.C. § 501.  Thus, "[t]o

establish infringement, two elements must be proven:  (1) ownership of a valid copyright, and (2)

copying of constituent elements of the work that are original." Feist Publ., Inc. v. Rural Tel.

Serv. Co., 499 U.S. 340, 361 (1991) (citing Harper & Row Publishers, Inc. v. National

Enterprises, 471 U.S. 539, 548 (1985)).

      Having determined that Sheldon is the owner of the copyright protecting the Photograph,

the Court need only determine whether the copyright is "valid," and whether defendant's actions

constitute the "copying of constituent elements of the work that are original." Id.

      As to the question of validity, "[i]n many cases, the existence of a valid copyright can be

established by the introduction into evidence of a Copyright Office certificate of registration.

Such a certificate, if timely obtained, 'constitute(s) prima facie evidence of the validity of the

copyright and of the facts stated in the certificate.'" Durham Indus., Inc. v. Tomy Corp., 630

F.2d 905, 908 (2d Cir. 1980) (citing 17 U.S.C. § 410(c)).  "It is clear, however, that a certificate

of registration creates no irrebuttable presumption of copyright validity.  Where other evidence in

the record casts doubt on the question, validity will not be assumed." Id.  The presentation of a

certificate of registration by plaintiff merely "shifts the burden of proof to Defendants to show the

invalidity of Plaintiff's copyrights." Prince Grp., Inc. v. MTS Products, 967 F. Supp. 121, 124

(S.D.N.Y. 1997)

      With respect to the question of originality, the Supreme Court has held that "Article I, § 8,

cl. 8, of the Constitution mandates originality as a prerequisite for copyright protection,"

represented by "independent creation plus a modicum of creativity." Feist Publ., Inc. v. Rural Tel

Serv., 499 U.S. at 361.  This burden is, however, minimal; "[o]riginality does not mean that the

work for which copyright protection is sought must be either novel or unique . . . . [I]t simply means a work independently created by its author, one not copied from pre-existing works, and a work that comes from the exercise of the creative powers of the author's mind, in other words, 'the fruits of [the author's] intellectual labor.'" Boisson v. Banian, Ltd., 273 F.3d 262, 268 (2d Cir. 2001) (quoting In re Trade-Mark Cases, 100 U.S. 82, 94 (1879)).  "The necessary originality for a photograph may be founded upon, among other things, the photographer's choice of subject matter, angle of photograph, lighting, determination of the precise time when the photograph is to be taken, the kind of camera, the kind of film, the kind of lens, and the area in which the pictures are taken." Eastern Am. Trio Products, Inc. v. Tang Elec. Corp., 97 F. Supp. 2d 395, 417 (S.D.N.Y.), appeal dismissed, 243 F.3d 559 (Fed. Cir. 2000).  Additionally, when there exists "prima facie validity of Plaintiff's copyright, the burden of proof shifts to the Defendant to show Plaintiff's work is not original." Prince Grp., Inc. v. MTS Products, 967 F. Supp. 121, 125 (S.D.N.Y. 1997) (citing In Design v. Lynch Knitting Mills, Inc., 689 F. Supp. 176, 177 (S.D.N.Y. 1988)).

2.  Analysis

Sheldon alleges that he owned a valid copyright in the Photograph, and that Plot Commerce's unauthorized reproduction of the Photograph on the Charged.fm Website constituted infringement.  In connection with his motion for default judgment, Sheldon has provided a Certificate of Registration demonstrating his ownership of the Photograph and providing prima facie evidence of the validity of the copyright. See 17 U.S.C. § 410(c).  As discussed supra, Section II(C)(2), the Certificate of Registration shows that the copyright was

24

registered formally on April 17, 2015, within the five-year deadline of first publication established in Section 410(c) of the Copyright Act.  (See Cert. of Reg.).  Since Plot Commerce has not appeared in this action to offer any evidence to overcome the prima facie showing of validity, the Court need only determine whether the Photograph was original and whether Plot Commerce's actions constituted infringement.

The allegations in the Complaint establish that the Photograph is "original."  The Photograph is the result of Sheldon's creative process, as he chose when to take the Photograph and the angle from which to capture the singer.  Thus, Plot Commerce undeniably copied original elements of plaintiff's work, by using the exact photograph taken by Sheldon. See Feist Publ., Inc. v. Rural Tel. Serv. Co., 499 U.S. at 361.

As to Plot Commerce's infringement, Sheldon alleges that "Charged.fm did not have authorization of Sheldon or the law to reproduce, distribute, display, or create derivative works of the Photograph." (Compl. ¶ 30).  "Without authorization of Sheldon or the law, Charged.fm reproduced and displayed cropped versions of the Photograph."  (Id. ¶ 31).   Thus, the allegations in the Complaint establish Plot Commerce's direct violation of the "exclusive rights of the copyright owner." Eastern Am. Trio Products, Inc. v. Tang Elec. Corp., 97 F. Supp. 2d at 417 (S.D.N.Y.); see 17 U.S.C. § 501.

Accordingly, the Court finds that Plot Commerce is liable for copyright infringement under the Copyright Act for the unauthorized reproduction of the Photograph on the Charged.fm Website.

25

E. <u>DMCA Claims</u>

    1. <u>Legal Standard</u>

"Section 1202(a) of the DMCA 'establishes a general prohibition against intentionally

providing false copyright management information . . . , and against distributing or importing for

distribution false copyright management information.'" <u>Ward v. Nat'l Geographic Soc.</u>, 208 F.

Supp. 2d 429, 449 (S.D.N.Y. 2002) (internal citations omitted).

    In order to establish a violation of this section, there are two prerequisites that must be

met: "(1) the person providing, distributing or importing the false [copyright management

information] must know the [copyright management information] is false, and (2) the person

providing, distributing, or importing the false [copyright management information] must do so

with the intent to induce, enable, facilitate or conceal an infringement of any right under title 17."

<u>Id.</u>  The statute requires 'volitional conduct' that 'causes' the reproduction or distribution to be

made.  <u>Capitol Records, LLC v. ReDigi Inc.</u>, 934 F. Supp. 2d 640, 656 (S.D.N.Y. 2013) (citing

<u>Cartoon Network LP, LLLP v. CSC Holdings, Inc.</u>, 536 F.3d 121, 131 (2d Cir. 2008)).

    According to Section 1202(b) of the DMCA:

> No person shall, without the authority of the copyright owner or the
> law (1) intentionally remove or alter any copyright management
> information, (2) distribute or import for distribution copyright
> management information knowing that the copyright
> management information has been removed or altered without authority of the
> copyright owner or the law, or (3) distribute, import for
> distribution, or publicly perform works, copies of works, or
> phonorecords, knowing that copyright management information has
> been removed or altered without authority of the copyright owner
> or the law, knowing, or . . .  having reasonable grounds to know,
> that it will induce, enable, facilitate, or conceal an infringement of
> any right under this title.

17 U.S.C. § 1202.  A civil action may be brought by "[a]ny person injured by a violation of section . . . 1202 . . . in an appropriate United States district court for such violation."  17 U.S.C. § 1203.

"Courts have applied this statute in a straightforward manner such that Plaintiffs here need only allege (1) the existence of [Copyright Management Information] on the [work in question]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally."  BanxCorp v. Costco Wholesale Corp., 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010) (citing Associated Press v. All Headline News Corp., 608 F. Supp. 2d 454, 461 (S.D.N.Y. 2009)).


2. Analysis

In this case, plaintiff alleges that Plot Commerce removed the Sheldon Metadata from all eleven reproductions of the Photograph and added the Charged.fm logo and information advertising concert tickets to nine of the reproductions on the Charged.fm Website.  (Compl. ¶¶ 14, 17).  According to plaintiff, he did not authorize Plot Commerce to "reproduce, display, alter, or distribute the Photograph."  (Id. ¶ 19).

Plaintiff asserts that Plot Commerce "knowingly added the Charged.fm Watermark to the Photograph and intentionally removed the Sheldon Metadata from the Photograph" in violation of Sections 1202(a) and (b) of the DMCA.  (Pl.'s 4/22/16 Mem.[12] at 20; Compl. ¶¶ 14-17, 38, 44).  Plaintiff alleges that defendant Plot Commerce committed these acts "knowing or having

---

[12]Citations to "Pl.'s 4/22/16 Mem." refer to plaintiff's Memorandum in Support of his Motion for Default Judgment, filed on April 22, 2016.

reasonable grounds to know that such removal or alteration would induce, enable, facilitate, or conceal a copyright infringement." (Compl. ¶ 44).

Sheldon also alleges that Plot Commerce "stripped out metadata which he had included in the only known licensed use of the Photograph." (Tr. at 3:16-18). In the absence of any contrary information and assuming the allegations to be true, plaintiff has sufficiently established the fact that there was certain Copyright Management Information on the original production of the Photograph, which had to have been deliberately removed since it was missing from the reproductions of the Photograph on the Charged.fm Website. (Compl. ¶¶ 15-16).

Accordingly, the Court finds that the Complaint adequately establishes Plot Commerce's liability for the addition of false copyright information under the DMCA, and for the removal of copyright information under the DMCA.

III. <u>Damages</u>

Plaintiff requests relief in the form of actual damages, statutory damages, attorneys' fees, and filing fees. For the defendant's violation of the Copyright Act, Sheldon requests actual damages in the amount of $30,566.20, representing the licensing fees Sheldon would have received had Plot Commerce properly licensed the Photograph from him. (Pl.'s 4/22/16 Mem. at 16). Additionally, plaintiff requests statutory damages of $25,000 for each of the 20 violations of the DMCA committed by Plot Commerce, amounting to $500,000. (Id.) The requested actual and statutory damages total $530,566.20. (Id. at 24).

28

A.  Copyright Infringement

1.  Legal Standards

"In [g]eneral . . . , an infringer of copyright is liable for . . . the copyright owner's actual damages and any additional profits of the infringer."  17 U.S.C. § 504.  Thus, under the Copyright Act, "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."  Id.  "Courts have adopted a wide range of methods by which to measure actual damages in copyright infringement actions, including the award of lost licensing fees."  Antenna Television v. Aegean Video Inc., No. 95 CV 2328, 1996 WL 298252, at *1 (E.D.N.Y. 1996) (citing Cream Records, Inc. v. Jos. Schlitz Brewing Co., 754 F. 2d 826, 827 (9th Cir. 1985); 17 U.S.C. § 504).  Courts have interpreted Section 504 of the Copyright Act to mean that, since it is unreasonable to expect plaintiffs to be able to calculate the actual damages they have suffered — particularly in default cases — "the owner must show that the thing taken had a fair market value.  But if the plaintiff owner has done so, and the defendant is thus protected against an unrealistically exaggerated claim, . . . [there is] little reason not to consider the market value of the uncollected license fee as an element of 'actual damages' under § 504(b)."  On Davis v. The Gap, Inc., 246 F.3d 152, 166 (2d Cir. 2001).

2.  Analysis

Plaintiff seeks damages in the form of lost licensing fees in order to avoid what would be the impossible calculation of Plot Commerce's profits stemming from the use of the Photograph. (Pl.'s 4/22/16 Mem. at 16).  In support of this request, Sheldon has provided other licensing

agreements showing that he has previously licensed photographs to other websites similar to Charged.fm, and therefore he has records indicating the typical cost of licensing a comparable photograph for a similar amount of time. (Id., Ex. A).  For example, Sheldon licensed a photograph of Jerry Seinfeld to a company for two years of unlimited advertisement use for $10,000 (less the bank charge for transfer for the net amount of $9,970).  (Id.)  Sheldon also licensed a photograph of the band One Direction in concert for use in an online editorial for one year for £2,160.00, or approximately $2,847.31.[13]  (Id.)  Finally, he licensed a photograph of the band Maroon 5 for use on three pages of one website for three months for £1,823.28, or approximately $2,403.45.

Based on these fees for licensing photographs of similar celebrities in the past, Sheldon estimates the fees he would have received from Plot Commerce's use of the Photograph by considering whether the Photograph was used as a corporate or promotional tool, the size of the Photograph on the screen, the length of time for which the Photograph was displayed, and any alterations made to the Photograph.  (See Sheldon Decl.[14]).  He did not consider Plot Commerce's infringement in these estimations.  (Id. ¶ 8).  Sheldon's estimation for the corporate and promotional use of the Photograph as a page background on the Charged.fm website for two years comes to £1,399.98.  (Id.)  His estimations for the corporate and promotional use in articles as "a click through to buy tickets" rather than as an "editorial[ ] illustrat[ion]" total £1,461.82.

_____

[13] The British Pounds to U.S. Dollar Exchange rate for the conversion was obtained from Bloomberg Market's Spot Exchange Rate as of 8/23/2016.

[14]Citations to "Sheldon Decl." refer to the Declaration of Jason Sheldon, filed with plaintiff's memorandum of law in support of his motion for default judgment on April 22, 2016.

(Id.)  Finally, Sheldon separately estimates that fees for Plot Commerce's nine corporate and promotional full-screen uses of the Photograph "rebranded with the Charged FM logo" would come to £18,343.08.  (Id.)  On April 22, 2016, the total of the three estimates of damages in British Pounds was equivalent to $30,566.20.[15]  (Id. ¶ 10).

The Copyright Act grants courts discretion in calculating the actual damages sustained by a prevailing party, as long as the claim is reasonable according to typical market values.  See id. In light of Plot Commerce's failure to appear to defend itself in this action, and the absence of any discovery in the case, the Court recognizes the impossibility of calculating exactly how much revenue Plot Commerce may have generated as a result of its use of the Photograph.  Other courts have thus awarded actual damages in the form of lost licensing fees in comparable situations. See, e.g., Antenna Television v. Aegean Video Inc., 1996 WL 298252, at *1.  As noted, in order for a plaintiff to request actual damages under the Copyright Act from a defendant in default, he "must show that the thing taken had a fair market value" in order to protect a defendant "against an unrealistically exaggerated claim."  On Davis v. The Gap, Inc., 246 F.3d at 166.

Here, plaintiff has provided other licensing agreements showing that he has previously licensed photographs to other websites similar to Charged.fm.  Of the licensing agreements plaintiff has provided, the agreement that best encompasses Plot Commerce's many uses of the Photograph is Sheldon's agreement to license a photograph of Jerry Seinfeld to a company for "unlimited advertising and marketing usage" on multiple platforms including a "[c]orporate or [p]romotional [w]ebsite" for $10,000 (less a bank charge for transfer).  (Pl.'s 4/22/16 Mem., Ex.

_____

[15] This amount in British pounds is equivalent to $27,969.24 as of August 23, 2016.

A).  Such an agreement would have permitted Plot Commerce's corporate web use of the photograph as a background, its use of the photograph as a click through to buy tickets, and its corporate web use of the photograph on multiple web pages.  (See Sheldon Decl. ¶ 8).

Thus, it appears that a licensing fee of $10,000 comparable to the one charged for the Seinfeld photograph would appear to be reasonable in this case.  However, plaintiff has asked for close to three times that amount without explaining why Plot Commerce's nine uses of the Photograph branded with a Charged.fm logo on its website would fall under a licensing agreement that would cost £18,343.08.  Indeed, the licensing agreement for the photograph of Jerry Seinfeld would have permitted the unlimited use of the photograph on multiple pages of a "[c]orporate or [p]romotional [w]ebsite" and would not have charged additional licensing fees for "rebranding" the photograph because the agreement specifically precluded transfer of title of the photograph to the client.  (Pl.'s 4/22/16 Mem., Ex. A).

Without further explanation as to why Sheldon would have been able to license the photograph in this case for so much more than the other fees he cites in support of his request for damages, the Court finds that plaintiff has not sufficiently established that the licensing fee requested, $30,566.20, is reasonable and in line with the market value of a licensing agreement for the Photograph.  Accordingly, this Court respectfully recommends that plaintiff be awarded $10,000 in actual damages resulting from defendant's violation of the Copyright Act, representing the licensing fees Sheldon would have received from Plot Commerce for the licensing of the Photograph.

B. <u>DMCA Violations</u>

In addition to lost licensing fees under the Copyright Act, plaintiff seeks statutory damages for 20 violations of the DMCA, asserting that each act of addition of false copyright management information under Section 1202(a) and each act of removal of copyright management information under Section 1202(b) constitutes a separate violation. The Court notes that there is uncertainty as to what constitutes a single violation of the DMCA, given the rarity of such egregious violations of the statute.

Plaintiff has brought claims against Plot Commerce, separating these two subsections of Section 1202 of the DMCA into independent violations. In light of the dearth of authority specifically addressing this question with respect to the DMCA, the Court employs general principles of statutory construction in its analysis. Accordingly, the Court reads and interprets the two subsections of the DMCA independently because it is the Court's "duty to give effect, if possible, to every clause and word of a statute." <u>United States v. Rowland</u>, No. 15 CV 985, 2016 WL 3361542, at *4 (2d Cir. June 17, 2016) (citing <u>State St. Bank & Tr. Co. v. Salovaara</u>, 326 F.3d 130, 139 (2d Cir. 2003) (quoting <u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2001)). Employing this canon of construction, courts have interpreted separate subsections of a statute as "provid[ing] for . . . separate and . . . different penalties." <u>Smith v. United States</u>, 571 F. Supp. 664, 666 (S.D.N.Y. 1983).

Section 1202(a) prohibits the addition of copyright information that falsely represents the ownership of the copyright: "No person shall knowingly . . . provide copyright information that is false." 17 U.S.C. § 1202(a). By contrast, Section 1202(b), which states, "No person shall . . . intentionally remove or alter any copyright information," clearly prohibits the removal of existing

33

copyright information from a work or a copy of that work.  See 17 U.S.C. § 1202(b).  Thus, the

two subsections of the statute appear to be aimed at different types of conduct.  Since it is entirely

possible for an infringing defendant to remove valid copyright information without adding false

copyright information and to add false copyright information without removing the existing

copyright information, it is reasonable to conclude that Congress intended these two subsections

to be construed as prohibiting different conduct.[16]

In this case, the Sheldon Metadata was removed from all eleven reproductions of the

Photograph, but the Charged.fm logo was only added to nine of the eleven reproductions.

(Compl. ¶ 17).  These two actions are not dependent upon each other, and therefore, having

reviewed the structure of the DMCA, this Court finds that separating the act of removal from the

act of addition of copyright information into two different subsections under Section 1202 of the

DMCA warrants consideration of each act of removal and each act of addition of copyright

information as a separate violation.  Thus, the eleven instances of removal of Sheldon's Metadata

from the Photograph and the nine instances of addition of Charged.fm's information amount to a

total of 20 violations of the DMCA by Plot Commerce.


      1. Legal Standard

"In [g]eneral . . . , a person committing a violation of section 1201 or 1202 [of the

DMCA] is liable for either (A) the actual damages and any additional profits of the violator . . . ,

or (B) statutory damages."  17 U.S.C. § 1203.  Such damages may be awarded in addition to

---

[16] The Court has not found any legislative history specifically addressing this issue.

damages awarded for copyright infringement under section 504 of the Copyright Act when "a defendant is charged with unlawful use of an image, along with alteration of copyright management information." <u>Kennedy v. Medgen, Inc.</u>, No. 14 CV 5843, 2016 WL 873043, at *2 (E.D.N.Y. Jan. 8, 2016).  According to Section 1203 of the DMCA, "[a]t any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of [S]ection 1202 in the sum of not less than $2,500 or more than $25,000."  17 U.S.C. § 1203.  However, "[t]he court in its discretion may reduce or remit the total award of damages in any case in which the violator sustains the burden of proving, and the court finds, that the violator was not aware and had no reason to believe that its acts constituted a violation."  <u>Id.</u>

In determining where within the range of $2,500 and $25,000 to award statutory damages, courts "consider [several] factors, namely, the difficulty of proving actual damages, the circumstances of the violation, whether Defendants violated the DMCA intentionally or innocently, and deterrence." <u>Agence France Presse v. Morel</u>, No. 10 CV 2730, 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014).  As relief for violations of the DMCA, "[t]he award of statutory damages is especially fitting in the default judgment context where Plaintiffs are without the benefit of any disclosure by the infringer, leaving damages uncertain." <u>Tu v. TAD Sys. Tech. Inc.</u>, No. 08 CV 3822, 2009 WL 2905780, at *2 (E.D.N.Y. Sept. 10, 2009) (citing <u>Sara Lee Corp. v. Bags of N.Y., Inc.</u>, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999) (awarding statutory damages where trademark infringer defaulted in the case)).

2. <u>Analysis</u>

Here, plaintiff has alleged that Plot Commerce both unlawfully reproduced the

Photograph and altered the embedded copyright information.  Accordingly, plaintiff is authorized to seek statutory damages under the DMCA in addition to the actual damages requested under the Copyright Act.  Plaintiff has requested statutory damages of $25,000 for each of the 20 violations of the DMCA, as actual damages would be exceedingly burdensome, if not impossible, to calculate.  In total, therefore, plaintiff seeks $500,000 in statutory damages under the DMCA.

Having considered the <u>Morel</u> factors, the Court finds that awarding maximum statutory damages of $25,000 per violation would be appropriate under the circumstances.  As discussed above, Plot Commerce's failure to participate in this litigation has rendered Sheldon completely unable to "to show Plot Commerce's profits that are attributable to the infringement."  (Pl.'s 4/22/16 Mem. at 16).  Further, plaintiff alleges that Plot Commerce intentionally removed the Sheldon Metadata from the Photograph and added the Charged.fm Watermark despite "knowing or having reasonable grounds to know that such removal or alteration would induce, enable, facilitate, or conceal a copyright infringement."  (Compl. ¶ 44).  It is hard to imagine how embedded metadata could have been removed accidently, and the evidence suggests that Plot Commerce acted willfully "by copying the Photograph from a source where Sheldon was identified as the copyright owner."  (Pl.'s 4/22/16 Mem. at 20; Compl. ¶¶ 10-14).  Plaintiff claims that "[d]espite knowing that Sheldon was the copyright owner of the Photograph, Plot Commerce reproduced and displayed the Photograph without first attempting to license it from Sheldon."  (Pl.'s 4/22/16 Mem. at 20; Compl. ¶ 19).

Even if the initial reproduction and alteration of the embedded copyright information in the Photograph on the Charged.fm Website were found not to be willful, Plot Commerce "had knowledge that its conduct represented infringement" at least as early as March 26, 2015, when

36

Eubanks confirmed that Plot Commerce was aware of Sheldon's claims. (Anderson Decl. ¶ 5).

"When a potential infringer has actual notice of another's patent rights, he has an affirmative duty

of due care not to infringe." SEB v. Montgomery Ward & Co., No. 99 CV 9284, 2008 WL

4540416, at *1 (S.D.N.Y. Oct. 1, 2008), aff'd, 594 F.3d 1360, 1366 (Fed. Cir. 2010), aff'd sub

nom. Global Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754 (2011). There are "provision[s]

[in place] to increase the penalty for willful infringements continued after requests to desist by

the copyright owner." Iowa State Univ. Research Found., Inc. v. Am. Broad. Co's., Inc., 475 F.

Supp. 78, 82 (S.D.N.Y. 1979), aff'd, 621 F.2d 57 (2d Cir. 1980).

Plaintiff alleges that during the period in which Eubanks and Anderson communicated

about potential settlement— March 26, 2015 through May 6, 2015— Plot Commerce continued

to display the Photograph on the Charged.fm Website. (Anderson Decl. ¶ 7). On April 22, 2016,

the date that plaintiff filed his Memorandum in Support of his Motion for Default Judgment, the

Photograph was still present on the Charged.fm Website's server. (See Pl.'s 4/22/16 Mem.). Plot

Commerce's efforts to settle the dispute through informal negotiations are irrelevant to the

question of whether its continued violations of the DMCA were willful. See Fitzgerald Publ'g

Co., Inc. v. Baylory Publ'g Co., Inc., 807 F.2d 1110, 1115 (2d Cir. 1986) (finding that "knowing"

violations of the Copyright Act do not require malice); Agence France Presse v. Morel, 2014 WL

3963124, at *4-5 (finding defendant's subsequent efforts to mitigate the damages caused by a

knowing violation irrelevant to the question of willfulness).

This brazen alteration and continued use of the Photograph, coupled with Plot

Commerce's efforts to avoid service and refusal to participate in this litigation further contributes

to the Court's conclusion that Plot Commerce was aware of the potential repercussions of its

actions.  (Tr. at 7:23-24).  Plot Commerce failed "to raise[ ] any objection or defense despite its

actual knowledge of this action," and "knowingly and willfully violated the DMCA with its

commercial use of the Photograph, refused to provide accurate information regarding its address

for service, then refused to appear before this Court despite being served with the Complaint and

subsequent pleadings regarding its default."  (Pl.'s 7/1/16 Mem. at 6, 8).  The Court concludes

that requiring Plot Commerce to pay maximum statutory damages would deter both Plot

Commerce and other companies from engaging in similarly egregious conduct in the future.

Accordingly, the Court finds that a maximum statutory damages award of $25,000 per

violation is appropriate under the DMCA.  Thus, in total, the Court respectfully recommends that

plaintiff be awarded a total of $500,000.00 in statutory damages for the defendant's 20 violations

of the DMCA.


C.  Attorneys' Fees

The Copyright Act provides that "[i]n any civil action under [Section 504 of the

Copyright Act], the court in its discretion may allow the recovery of full costs by or against any

party other than the United States or an officer thereof."  17 U.S.C. § 505.  Attorneys' fees are

explicitly considered as part of such costs.  Id.  Additionally, under the DMCA, "[i]n an action

brought under subsection (a)," for a violation of Section 1201 or 1202, "the court . . . in its

discretion may award reasonable attorney's fees to the prevailing party[.]"  17 U.S.C. § 1203.

Such an award is not automatic, but rather "lies within the sole and rather broad discretion

of the [c]ourt."  Baker v. Urban Outfitters, Inc., 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006).  In

exercising this discretion, courts are to consider a broad range of equitable factors, "including the

non-prevailing party's frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), together with the need in particular circumstances to advance considerations of compensation and deterrence." Id. Of these factors, however, "objective reasonableness . . . should be given substantial weight." Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 108 (2d Cir. 2014) (internal quotations omitted).

According to the Supreme Court, "[p]revailing plaintiffs and prevailing defendants are to be treated alike[.]" Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994). "'The touchstone of . . . [Section] 505 is whether imposition of attorney's fees will further the interests of the Copyright Act' – specifically, 'encouraging the raising of objectively reasonable claims and defenses, . . . [and] to deter infringement.'" Mahan v. Roc Nation, LLC, No. 14 CV 5075, 2015 WL 4388885, at *2 (S.D.N.Y. July 17, 2015), aff'd, 634 F. App'x 329 (2d Cir. 2016) (quoting Mitek Holdings, Inc. v. Arce Eng'g Co., 198 F.3d 840, 842-43 (11th Cir.1999)). "[C]osts and attorney's fees are equally available to prevailing plaintiffs and defendants." Baker v. Urban Outfitters, Inc., 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006), aff'd, 249 F. App'x 845 (2d Cir. 2007) (citing Fogerty v. Fantasy, Inc., 510 U.S. at 534).

Should a court decide to award fees, it must ensure that the award is reasonable. Courts employ the "lodestar" method in calculating reasonable attorneys' fees, multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. See Perdue v. Kenny A., 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002). Although there is a "strong

presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors. Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999); Cowan v. Ernest Codelia, P.C., 2001 WL 30501 at *7.

In this case, the Court requested that plaintiff submit supplemental papers documenting the hours spent by counsel on the case and the rate requested, because the "party seeking the award has the burden of submitting evidence supporting the hours worked and rates charged." (Tr. at 13:15-17); accord S.W. ex rel. N.W. v. Bd. of Educ. of City of New York, 257 F. Supp. 2d 600, 603 (S.D.N.Y. 2003), aff'd and remanded sub nom. A.R. ex rel. R.V. v. New York City Dep't of Educ., 407 F.3d 65 (2d Cir. 2005). Evan Anderson and Kalpana Nagampalli, counsel for plaintiff, submitted declarations on July 26, 2016. (See Pl.'s 7/26/16 Ltr., Ex. B, C). Both Anderson and Nagampalli request payment at an hourly rate of $300.

1. Reasonable Hourly Rate

When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d at 183-84. To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. Id. In Arbor Hill, the Second Circuit adopted the following factors to guide the court's inquiry as to what constitutes a reasonable hourly rate:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to

> acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases . . . .

Id. at 187 n.3 (citation omitted).  A number of courts within the Second Circuit have applied these factors when awarding attorney's fees.  See Manzo v. Sovereign Motor Cars, Ltd., No. 08 CV 1229, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010); Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010); Lochren v. County of Suffolk, No. 01 CV 3925, 2008 WL 2039458, at *2 (E.D.N.Y. May 9, 2008); see also Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Among other things, courts are instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . . , the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . . , and other returns (such as reputation, etc.) the attorney might expect from the representation

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d at 184; see also Heng Chan v. Sung Yue Tung Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007).  In awarding attorneys' fees, the Court is guided by the fact that default actions are relatively simple legal matters, while taking into account the attorneys' degree of skill and the Court's own experience dealing with similar claims.

Plaintiff requests that both Mr. Anderson and Ms. Nagampalli be compensated at an

hourly rate of $300.00.  Neither Mr. Anderson nor Ms. Nagampalli, however, has included a

description of their qualifications, outside of their status as attorneys, in any papers filed with the

Court.  In plaintiff's July 26, 2016 letter, counsel for plaintiff asserts that "courts in this district

have routinely approved $300 per hour or higher rates as reasonable for senior associates in

intellectual property matters."  (Pl.'s 7/26/16 Ltr. at 2) (citing Realsongs Universal Music Corp.

v. 3A North Park Ave., 749 F. Supp. 2d 81, 90-92 (E.D.N.Y. 2010) (approving rate of $325 per

hour for a senior associate in an intellectual property case where default occurred); Microsoft

Corp. v. Computer Care Ctr., Inc., 06 CV 1429, 2008 WL 4179653, at *14-15 (E.D.N.Y. Sept.

10, 2008) (approving hourly rate of $500 for a partner and $385 for an intellectual property

associate with several years of experience); Entral Grp. Int'l v. Sun Sports Bar Inc., No. 05 CV

4836, 2007 WL 2891419, at *10 (E.D.N.Y. Sept. 28, 2007), (finding the rates of $540 for partner

as well as $360 and $340 per hour for associates reasonable)).

While an hourly rate of $300 is appropriate for a senior associate or an associate who has

specialized in intellectual property, without information regarding Mr. Anderson's or Ms.

Nagampalli's qualifications or years of experience working on intellectual property cases, the

Court is unable to make a finding that an hourly rate of $300 is appropriate under these

circumstances.  Courts have determined that it is "proper for . . . [a] Judge . . . to recommend the

rejection of the application for fees for . . . attorneys and paralegals [if] there [i]s insufficient

information regarding their qualifications and experience." Custodio v. American Chain Link &

Const., Inc., No. 06 CV 7148, 2014 WL 116147, at *2 (S.D.N.Y. Jan. 13, 2014) (citing Yea Kim

v. 167 Nail Plaza, Inc., 2009 WL 77876, at *9 (S.D.N.Y. Jan. 12, 2009) (reducing attorneys' fees

for attorneys and paralegals where "no information has been provided as to '[their] experience,

reputation and ability'")).  Other courts have lowered attorneys' rates "[b]ased on their failure to provide any information regarding their skill, experience or reputation[.]"  Aiello v. Town of Brookhaven, No. 94 CV 2622, 2005 WL 1397202, at *7 (E.D.N.Y. June 13, 2005).

Without a basis for determining a reasonable rate for the work of Mr. Anderson and Ms. Nagampalli, the Court respectfully recommends that the request for attorneys' fees be denied without prejudice at this time, and that plaintiff be granted leave to refile such a request with sufficient information to support the requested rates.

### D. Costs

As the Court has already noted, the Copyright Act provides that "[i]n any civil action under [Section 504 of the Copyright Act], the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof."  17 U.S.C. § 505.  Plaintiff has requested a total of $950.00 in costs associated with this action, representing $450.00 "for the filing fee for this action in the Southern District of New York" (Sheldon Decl. ¶ 11), and $500.00 "spent . . . in . . . attempting to serve Plot Commerce with the Complaint and other documents in this action."  (Nagampalli Decl. ¶ 6).

Insofar as plaintiff has provided no documentation in support of these requests, the Court has no basis for evaluating their reasonableness.  The Court respectfully recommends, therefore, that plaintiff's request for costs incurred in attempting to serve the defendant be denied due to lack of adequate documentation.  Cf. Joe Hand Promotions, Inc. v. Elmore, No. 11 CV 3761, 2013 WL 2352855, at *12 (E.D.N.Y. May 29, 2013) (finding that "[p]laintiff . . . failed to submit adequate documentary evidence in support of its request for $150 in service costs and therefore

den[ying] [p]laintiff's request for reimbursement of such service costs").  While courts may validly take judicial notice of their own filing fees, see Phillip Morris USA, Inc. v. Jackson, 826 F. Supp. 2d 448, 453 (E.D.N.Y. 2011) (taking judicial notice of the filing fee for this court), plaintiff has provided no authority for taking judicial notice of the filing fee in another district. Further, although plaintiff has requested $450.00 representing the filing fee in the Southern District of New York, the website for the Southern District of New York indicates that the filing fee has been $400.00 since December 1, 2014.

Accordingly, the Court respectfully recommends that plaintiff's request for costs be denied without prejudice, and that plaintiff be given leave to refile his requests for such costs with further documentation and authority in support of such an award.


CONCLUSION

In light of the foregoing, the Court finds that plaintiff has sufficiently proved infringement under Section 504 of the Copyright Act and improper handling of copyright information under Section 1202 of the DMCA.  Accordingly, the Court respectfully recommends that plaintiff's motion for default judgment be granted, and that plaintiff be awarded $510,000, representing $10,000 in actual damages under the Copyright Act and $500,000 in statutory damages under the DMCA. The Court respectfully recommends, however, that plaintiff's request for attorneys' fees and costs be denied without prejudice at this time, and that plaintiff be given leave to refile such request with appropriate information about the qualifications of counsel justifying the hourly rate requested and documentation of costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the

44

Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  Failure

to file objections within the specified time waives the right to appeal the District Court's order.

See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72; Caidor v. Onondaga Cnty., 517 F.3d

601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties

either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       August 26, 2016

/s/ Cheryl Pollak

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

45